UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARIFA MOSED,
O/B/O M.A.H.N., a minor

      Plaintiff,                       Civil Action No. 13-10073

v.                                 HON. AVERN COHN
                                 U.S. District Judge
                                 HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sharifa Mosed ("Plaintiff") brings this action on behalf of her minor son, M.A.H.N. ("Claimant") under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying the application for Childhood Supplemental Security Income under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   For the reasons set forth below,  I recommend that Defendant's motion be GRANTED, and that Plaintiff's motion be DENIED.

## PROCEDURAL HISTORY

Plaintiff, proceeding on behalf of Claimant, applied for Childhood Supplemental Security Income on February 26, 2010, alleging disability as of January 1, 2002 (Tr. 116-

119). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on September 20, 2011 in Detroit, Michigan (Tr. 35). Administrative Law Judge ("ALJ") Patrick J. MacLean presided (Tr. 35). Claimant and Plaintiff, represented by attorney Andrea Hamm, testified (Tr. 41-57, 57-69). On October 28, 2011, ALJ MacClean found Claimant not disabled (Tr. 31). On November 27, 2012, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision on January 9, 2013.

## BACKGROUND FACTS

Claimant, born September 24, 1998, was 13 when ALJ MacLean issued his decision (Tr. 31, 116). The application for benefits alleges disability due to hearing loss in both ears (Tr. 138).

### A. Claimant's Testimony

*Claimant's attorney prefaced her client's testimony by amending the alleged onset of disability date to February 26, 2010* (Tr. 37-38).

Claimant offered the following testimony:

He currently attended "Universal Academy," but had attended Priest Elementary up until the previous year (Tr. 41). He changed schools because he was not accepted by other students due to his need for hearing aids (Tr. 42). He continued to stay in touch with one friend at the former school (Tr. 43). He liked Universal Academy because most of the other students were his cousins (Tr. 43). Math was his favorite subject and social studies was his least favorite (Tr. 43). He had never repeated a grade, but previously received tutoring in math and language arts (Tr. 44). The tutoring sessions improved his class performance (Tr.

44).  He had not been tutored since changing schools (Tr. 45).

      With hearing aids, Claimant could hear from the front or middle of the classroom, but even with the use of hearing aids, he sometimes experienced difficulty hearing if sitting in the back (Tr. 45-46).  He had one brother and four sisters (Tr. 46).  Claimant brought his non-hearing impaired brother with him when he left home because the brother could hear "cars,""beeping," and cousins calling to him (Tr. 47).  He generally rode to school with his cousins (Tr. 49).

      Claimant played basketball, but did not belong to any sports teams (Tr. 49).  He watched television, noting that he turned the volume up to a level intolerable to his siblings (Tr. 49).  He had difficulty reading "hard words" but otherwise did not experience reading problems (Tr. 50).  He did not take medicine, but had periodic ear examinations (Tr. 50).  Due to hearing problems, he was suspended twice from his former school after failing to respond to direction (Tr. 50-51).

      In response to questioning by his attorney, Claimant stated that he began taking his brother on outings with him after being struck by a car (Tr. 51).  At present, he did not experience trouble hearing in class due to "a big speaker" in the back of the classroom at his new school (Tr. 52).  He now experienced fewer problems hearing his teacher (Tr. 52-53).  He was teased for wearing hearing aids by other students at his old school (Tr. 53).  He fought with other students at his old school twice (Tr. 53).  His one friend from the former school was his cousin (Tr. 53).  He also had one non-relative friend (Tr. 54).  He was "sometimes" successful making friends at his new school (Tr. 55).  He occasionally had

-3-

difficulty understanding others (Tr. 55-57).

### B. Plaintiff's Testimony

Plaintiff offered the following testimony regarding Claimant's limitations:

Claimant sometimes hid his hearing aids in his pocket because other students made fun of him (Tr. 58). On occasion, he took Albuterol for asthma (Tr. 59). He was examined by an audiologist every six months (Tr. 59). His current school progress was "good" (Tr. 59). As a result of his refusal to wear his hearing aids, he was suspended twice in the previous year for failing to follow directions and "making noise" (Tr. 60). Tutoring for reading helped "a little" (Tr. 60). He had not been placed in special education (Tr. 60). He did not receive help with speech (Tr. 61). Plaintiff was dissatisfied with Claimant's school progress, noting that she wanted him to improve his grades and "listen more to the teachers" (Tr. 61). Claimant was able to perform household chores but typically, did not complete them (Tr. 62). Plaintiff stated that "[w]e have to sit there screaming at him to finish [his homework]" (Tr. 62). Claimant played soccer occasionally, but was limited by asthma (Tr. 62). He did not experience problems attending to self care needs and was in generally good health (Tr. 63). He was not able to swim due to periodic ear infections (Tr. 64).

In response to questioning by her attorney, Plaintiff stated that her son behaved disruptively at home on a daily basis (Tr. 64-65). She noted that pediatricians had recommended the use of Attention Deficit Hyperactivity Disorder ("ADHD") medication but that Claimant's father had refused (Tr. 65, 69). Claimant did not experience trouble getting along with relatives and was generally social (Tr. 66). Claimant became frustrated when

-4-

required to repeat himself or ask others to repeat themselves and would typically start screaming (Tr. 67). While doctors had recommended medicine for ADHD, none of them had recommended psychological therapy (Tr. 68).

### C.    Medical and Academic Evidence[1]

In January, 2003, pediatrician David Madgy, D.O. noted tube implantation surgery the previous year, observing that the tubes were "functional" (Tr. 252). In December, 2003, Claimant was prescribed amoxicillin for an ear infection (Tr. 181). In January, 2004, Dr. Madgy found the presence of moderate hearing loss (Tr. 249). The same month, Claimant underwent a myringotomy with tube placement in both ears (Tr. 178). In March, 2006, Claimant underwent a second bilateral tube placement without complications (Tr. 176-177). In January, 2008, Dr. Madgy noted that the most recent tubes were stable (Tr. 244). September, 2009 audiology records state that Claimant's hearing loss was moderate to severe (Tr. 190).

January, 2010 Individualized Education Program ("IEP") records state that Claimant was making "good" progress (Tr. 195). He received average and above average grades with strengths in math and science but required improvement in the area of citizenship (Tr. 195). The same month, Dr. Madgy noted two ear infections in the past six months (Tr. 240). July, 2010 audiology records state that Claimant experienced "moderate" hearing loss (Tr. 202). The hearing loss was deemed "mild" with the use of hearing aids (Tr. 202). Ariel Waitzman,

---

[1]Treatment for conditions unrelated to the disability claim, although reviewed, are omitted from the present discussion.

-5-

M.D. opined that Claimant would nonetheless "still be challenged in work environments that are noisy or where he has to hear very quiet sounds or voices, but in most normal verbal environments with amplification . . . should perform reasonably well" (Tr. 202, 206). Audiology records from November, 2010 showed bilateral moderate to severe hearing loss (Tr. 262, 281).  Audiology records from later the same month state that Claimant's hearing loss was "mild" when using hearing aids (Tr. 284).  His hearing "discrimination" while using aids was deemed "good" (Tr. 284).  May, 2011 pediatric records indicate that Claimant required the use of an Albuterol inhaler (Tr. 275).

In September, 2011, Claimant's health education teacher at his former school completed a questionnaire, finding no problems in "acquiring and using information," or "attending and completing tasks," but dome degree of limitation in "interacting and relating with others" (Tr. 288-290).  His problems in the "interacting" domain were deemed mostly "slight," with serious/very serious problems with following rules, respecting authority, and taking turns in conversation (Tr. 290).  Claimant's social studies teacher completed the same questionnaire, finding, at most, "slight" problems in acquiring and using information and the presence of hearing problems requiring the use of an auditory trainer under the domain of "health and physical well-being" (Tr. 292, 297).  The same teacher found no problems in any other domain (Tr. 293-296).

### D.  The ALJ's Decision

Citing the medical and academic records, ALJ MacLean found that Claimant experienced the severe impairments of "bilateral hearing loss with SNHL [Sensorineural

Hearing Loss] of 50 decibels in right ear and 52 decibels in left ear with hearing aids and asthma" but that the conditions did not meet or equal any listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (Tr. 22). The ALJ found that in the domain of "Acquiring and Using Information," Claimant had "less than marked limitation" (Tr. 26). The ALJ acknowledged that Claimant was placed at grade 3.8 reading level while in sixth grade, but that an IEP. showed a reading level of fourth grade (Tr. 26). He also noted that Claimant passed all of his classes with "average or above average grades" (Tr. 26). In the domain of "Attending and Completing Tasks," he also found "less than marked limitation" (Tr. 27). He cited a recent teacher questionnaire stating that Claimant did not experience problems with task completion (Tr. 27).

In the domain of "Interacting and Relating to Others," the ALJ again found that Claimant had "less than marked" limitation (Tr. 28). The ALJ noted that although Claimant did not have friends other than his cousins, the recent teacher questionnaire found no problems socializing (Tr. 28). The ALJ found "less than marked" limitation in the domain of "Moving About and Manipulating Objects," noting that aside from some level of impairment as a result of asthma, Claimant had "no serious" physical limitation (Tr. 29). The ALJ found "less than marked" limitation in "Caring for Yourself," noting that although Claimant's brother had accompanied him on outings in the past, Claimant was able to travel to and from his new school without his brother (Tr. 30). The ALJ cited teacher questionnaires showing no limitation in this domain (Tr. 30). Finally, the ALJ found "less than marked" limitation in the domain of "Health and Physical Well-Being," observing that

-7-

aside from mild asthma and hearing loss, Claimant was "in good health" (Tr. 31).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6ᵗʰ Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

### Childhood Benefits

-8-

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations."[2]  In evaluating whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a).  In determining whether the child claimant is disabled at the third step, the Commissioner determines functional ability in six domains:

   (i) Acquiring and using information;

   (ii) Attending and completing tasks;

   (iii) Interacting and relating with others;

   (iv) Moving about and manipulating objects;

   (v) Caring for yourself; and,

   (vi) Health and physical well-being.

   20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must  . . .  result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one

_____

[2]Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously" with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added).   20 C.F.R. § 416.926a(e)(3).

## ANALYSIS

Plaintiff disputes the ALJ's finding of less than marked limitation in the domains of "acquiring and using information" and "attending and completing tasks." *Plaintiff's Brief* at 6-8. She points out that a finding of marked limitation in two or more domains would result in a disability finding. *Id* at 5; 20 C.F.R. § 416.926a(b)(1).

### A. Acquiring and Using Information

Plaintiff faults the ALJ for citing but failing to consider the import of school records showing that Claimant was reading at the 2.7 to 3.8 grade level while in sixth grade. *Plaintiff's Brief* at 6-7 (citing Tr. 26, 148).   However, the March, 2010 remark, made by Claimant's former reading teacher, is accompanied by her conclusion that Claimant did not experience *any* limitation in the domain of acquiring and using information (Tr. 149).   Likewise, while Plaintiff contends that a January, 2010 assessment showing that Claimant's language skills were affected by hearing loss supports a finding of marked limitation in this domain, the same assessment also states that Claimant was an average to above average student and was making "good" progress achieving

-10-

the goals set in IEP (Tr. 195).   September, 2011 teacher assessments also support the ALJ's findings.  Claimant's former health education teacher found no problems in acquiring and using information (Tr. 288-289). Consistent with the ALJ's finding of less than marked limitations, Claimant's former social studies teacher found mostly "slight" problems, with serious problems in only three of thirteen subcategories (Tr. 290).

Claimant's testimony also undermines the argument that he experienced marked limitation in this domain.  He stated that tutoring helped him improve his math and language skills, but that he had not been tutored since changing schools (Tr. 44-45). (Tr. 45).  He was able to follow classroom lessons with the help of an amplification device in his classroom (Tr. 52-53).  Because substantial evidence easily supports the ALJ's conclusion that limitation in this domain was less than marked, remand on this basis is unwarranted.

### B.  Attending and Completing Tasks

The ALJ's finding of less than marked limitation in the domain of attending and completing tasks is also well supported.  Plaintiff notes that Claimant experienced some degree of hearing impairment even with the use of hearing aids. *Plaintiff's Brief* at 8.  However, July and November, 2010 audiology records state that Claimant's hearing loss was deemed "mild" with the use of hearing aids (Tr. 202, 284).  The November, 2010 records state that while "noisy" environments or the need to hear "very quiet" sounds would create difficulty, Claimant could "perform reasonably well" "in most normal verbal environments" (Tr. 202, 206).  Plaintiff notes that Claimant was struck by a car after failing to hear the approaching vehicle. *Plaintiff's Brief*

-11-

2:13-cv-10073-AC-RSW   Doc # 13   Filed 01/27/14   Pg 12 of 13   Pg ID 387

at 8 (Tr. 51).  However, she does not dispute that Claimant was not wearing his hearing aids at the time of accident.  While Plaintiff also points out that Claimant refrained from wearing his hearing aids to avoid being teased by other students, Claimant testified that he was not teased at his new school and presumably, wore his hearing aids regularly  (Tr. 53).

Independent of these arguments, little, if any evidence supports the conclusion that Claimant experienced marked limitation in the domain of attending and completing tasks.  In January, 2010, Claimant's former language arts teacher found no limitation in this domain (Tr. 150).  Likewise, in September, 2011, his former health education and social studies teachers found no problems in attending and completing tasks (Tr. 289, 293).   Claimant was, at worst, an average student (Tr. 149).

In closing, I note that the record shows some level of limitation as a result of hearing loss and asthma.  As such, the recommendation to uphold the administrative decision should not be read to trivialize these conditions.  Nonetheless, because the ALJ's finding that Claimant did not experience marked limitation in any domain is well within the "zone of choice" accorded the administrative fact-finder, the Commissioner's decision should be upheld.  *Mullen, supra,* 800 F.2d at 545.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion be GRANTED and that  Plaintiff's motion be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of

-12-

service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6ᵗʰ Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6ᵗʰ Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6ᵗʰ Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6ᵗʰ Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 23, 2014               s/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 27, 2014, electronically and/or by U.S. Mail.

                                      s/Michael Williams
                                      Michael Williams
                                      Case Manager for the
                                      Honorable R. Steven Whalen

-13-